**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

Yomar Vazquez-Filippetti, et al.,
  Plaintiffs,

v.                                                                      Civil No. 03-2071(HL)

Banco Popular de Puerto Rico, et al.,
  Defendants.

**OPINION AND ORDER**

    Before the Court is a Renewed Motion for Judgment as a Matter of Law filed by co-defendants Banco Popular de Puerto Rico ("BPPR") and Federal Insurance Company ("Federal Insurance") pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.[1] Fed.R.Civ.P. 50(b)(1)(C).  Plaintiffs filed an opposition to said motion.[2]

    For the reasons set forth below, co-defendants Banco Popular de Puerto Rico and Federal Insurance Company's renewed motion for judgment as a matter of law is **denied**.

**BACKGROUND**

    The facts, as presented at trial are to be viewed in a light most favorable to plaintiffs. *See Cruz-Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 275 (1st Cir.2003); *Mangla v. Brown Univ.*, 135 F.3d 80, 82 (1st Cir.1998) (when evaluating a motion for judgment as a matter of law, a court must read the evidence in the light most favorable to the jury verdict). On November 20, 2002, at approximately 2:30 p.m., plaintiff Yomar Vázquez Filippetti (hereafter "Yomar") was withdrawing money from a Banco Popular de Puerto Rico (BPPR)

---

[1] *See* docket no. 175.

[2] See docket no. 187.

automatic teller machine (ATM) located on Villa Street in Ponce, Puerto Rico.  The ATM is located on the outside wall of BPPR's bank building with a sidewalk in front of it.  The ATM is located in the same area as BPPR's drive-thru Auto Bank facilities, which are perpendicular to the ATM.  As a result, when performing a transaction at the ATM, the ATM user's  back is toward the front of the vehicles conducting business at the Auto Bank.  The distance from the front bumper of a vehicle conducting a transaction at the Auto Bank and the ATM is approximately 49.97 feet.  On November 20, 2002, there were no guardrails, barriers, or other protective devices of any kind separating the sidewalk, running in front of the ATM, from the exit lanes of the Auto Bank.  However, there were yellow posts around the Auto Bank machinery.  The curb of the sidewalk in front of the ATM  was painted yellow and reached approximately five (5) inches high, which is substandardly low.

While Yomar was withdrawing money from the ATM, co-defendant José Toro Rodríguez ("José Toro") was performing a transaction at the Auto Bank from a 1996 Mercury Grand Marquis automobile. Due to the lay out of the Auto Bank and the ATM, a person performing an ATM transaction must have their back toward the exit lane of the Auto Bank. Thus, the front of José Toro's vehicle faced directly toward Yomar's back.  After completing his transaction, José Toro shifted the car into the drive position, and the car suddenly accelerated forward, striking Yomar from behind.  Consequently, Yomar's body was pinned inside the ATM, leaving her crushed and mutilated between the car and the ATM for several minutes.  During the acceleration, José Toro did not attempt to apply the brakes.  After the impact, José Toro did not attempt to back up or otherwise extricate the car from Yomar.  As a result of the incident, Yomar sustained multiple serious injuries, and her right leg had to be amputated above the knee.

Plaintiff Yomar, her mother and siblings, filed a personal injury action in this Court against BPPR, José Toro, Felix Toro Rodríguez (the owner of the  1996 Mercury Grand Marquis), Cecilia Petition Garcia (the wife of Felix Toro Rodríguez), and their respective insurance providers.  Jurisdiction for the suit was based on diversity of citizenship of all parties pursuant to 28 U.S.C. § 1332.  The matter was tried before a jury, and on March 18,

2005, the jury returned a verdict in favor of plaintiffs.  In its verdict, the jury awarded a total of six million dollars in damages, apportioning seventy-five percent (75%) of the liability to BPPR and its insurance provider Federal Insurance, and twenty-five percent  (25%) of the liability to the remaining defendants.  BPPR and Federal Insurance now move for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 50(b)(1)(C).

## DISCUSSION

The Court's review of a renewed motion for judgment as a matter of law is very limited.  A motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure may be granted only when there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. *See Richards v. Relentless, Inc.*, 341 F.3d 35, 41 (1st Cir.2003); *Guilloty Perez v. Pierluisi*, 339 F.3d 43, 50 (1st Cir.2003). "A party seeking to overturn a jury verdict faces an uphill battle." *See Marcano Rivera, et al.  v. Turabo Medical Ctr. Partnership*, 2005 WL 1654340, at * 3 (1st Cir.2005). "Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." *Id.* (quoting *Rivera Castillo v. AutoKirey, Inc.,* 379 F.3d 4, 9 (1st Cir. 2004)); *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 565 (1st Cir. 2003); *Keisling v. SER-Jobs for Progress, Inc.*, 19 F.3d 755, 759-60 (1st Cir.1994).

A motion for judgment as a matter of law may only be granted if "the evidence together with all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion, namely, that the moving party [is] entitle to judgment." *PH Group Ltd. v. Birch*, 985 F.2d 649, 653 (1st Cir.1993).  In evaluating the evidence, however, the Court "may not assess the credibility of witnesses, evaluate the weight of the evidence or resolve conflicts in testimony, but must view all facts and reasonable inferences therefrom in the light most favorable to the non-movant." *Davet v. Maccarone,* 973 F.2d 22, 28 (1st Cir.1992).  Applying these principles to the instant case requires that defendants' motion be denied.

4

In the present case, defendants BPPR and Federal Insurance move for judgment as a matter of law on the ground that the evidence at trial was insufficient to allow a reasonable jury to conclude that BPPR breached its duty to plaintiffs to provide a safe environment at the ATM site.  Specifically, defendants argue that (1) aside from a photograph that showed a distorted view, plaintiffs did not present expert witness testimony or other evidence to prove that installation of a barrier between ATM users and the exit lanes of the Auto Bank was a safety requirement or otherwise, that the site was unsafe; (2) plaintiffs' allegations that the site was unduly unsafe are beyond the common reach of lay persons; and for the foregoing reasons, (3) the jury could not reject and had to accept the testimony of defendants' expert witness, Dr. Rolando Garcia Pacheco.

Plaintiffs brought their claims against defendants under Articles 1802 and 1803 of the Civil Code of the Commonwealth of Puerto Rico, 31 L.P.R.A. §§ 5141, 5142.  Under Article 1802, "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 L.P.R.A. § 5141. Article 1803 provides that the obligation imposed by Article 1802 is "demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible." 31 L.P.R.A. § 5142.  Further, "[o]wners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the services of the branches in which the latter are employed or on account of their duties." *Riley v. Rodriguez De Pacheco*, 119 D.P.R. 762, 19 P.R. Offic. Trans. 806 (P.R. 1987). Also, under Puerto Rico law, a business establishment, which opens its business to the public for the purpose of conducting commercial operations for its own benefit, has a duty to maintain its premises in a safe condition so that its clients are not injured.  *See Torres v. K-Mart*, 233 F.Supp.2d 273, 278 (D.P.R. 2002); Articles 1802, 1803, 1057 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 5141, 5142, 3021.

"To state a claim for negligence under the law of Puerto Rico, a plaintiff must prove that '(1) defendant owed a duty to prevent the harm by conforming to a reasonable standard of conduct; (2) defendant breached that duty through a negligent act or omission; and (3) the

5

negligent act or omission caused the plaintiff's harm." *Cruz-Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 275-76 (1st Cir.2003) (quoting *Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 958 F.2d 1169, 1171 (1st Cir.1992)). *See also* 31 L.P.R.A. §§ 5141, 5142.  In the present motion before the Court, defendants do not dispute that they owed  a duty to maintain a safe environment for ATM users at the BPPR Villa Street branch.  Thus, the Court's inquiry must focus on whether there was sufficient evidence for the jury to conclude that BPPR breached its duty through a negligent act or omission that was the proximate cause of plaintiffs' harm.

At trial, plaintiffs' theory of liability rested on allegations the BPPR was negligent: (1) by installing the ATM in a location vulnerable to vehicle penetration from vehicles exiting the Auto Bank facilities; (2) by failing to install the ATM at an alternate location within the bank's premises where the safety of its users would not be compromised; (3) by installing the ATM in a location whereby in order to perform their banking transactions its users had their back towards the Auto Bank and the cars exiting its facilities at such a close and perilous distance; and (4) by failing to install guardrails, barriers or any other type of device to protect persons using the ATM from the vehicular traffic exiting the Auto Bank.

As an initial matter, defendants contend that plaintiff's Exhibit No. 36, a photo of the ATM and Auto Banco facility, presents a distorted view of the ATM and Auto Bank area because certain areas appear smaller or larger than they actually are.  This argument is not persuasive.  It was determined at trial, as a preliminary matter, that the photograph depicted a correct likeness of the scene that it purported to represent. *See Lubanski v. Coleco Indus., Inc.*, 929 F.2d 42, 47-48 (1st Cir.1991).  Moreover, defendants themselves presented the jury with precise measurements of and distances between the objects featured in the photograph.  Thus, there is no indication that defendants were in any way prejudiced by plaintiffs' use of Exhibit No. 36.  *See id.*

Defendants argue that plaintiffs failed to present sufficient evidence that BPPR was negligent.  Specifically, defendants argue that in light of this alleged deficiency of evidence, the jury could not reject and had to accept the testimony of their expert witness, Dr. Rolando Garcia Pacheco, because (1) the issue of whether the ATM was in an unsafe location or could

6

have been installed in a safer location is beyond the common reach of lay persons, and (2) Dr. Garcia Pacheco's testimony stood alone, uncontested, uncontradicted, and unimpeached. At trial, Dr. Garcia Pacheco, who holds a Ph.D. in Transportation Engineering, testified that based on his analysis the ATM site conformed to all relevant guidelines and standards; that all safety design elements were met; and that at the time of the accident José Toro's conduct exceed all safety design parameters. Dr. Garcia Pacheco concluded that the site provided all the necessary conditions for the safe operation of a P-model vehicle, such as the Grand Marquis driven by José Toro.

In support of their arguments, defendants assert that plaintiffs' Exhibit No. 36 (a photo of the ATM and Auto Banco facility) was the only evidence proffered by plaintiffs to support their allegations that BPPR was negligent. This assertion is incorrect. In support of their negligence theory, plaintiffs submitted multiple photographs of the BPPR Villa Street branch's ATM area, Auto Bank facilities, and bank structure.[3] Additionally, plaintiffs presented the testimony of plaintiff Yomar, co-defendant José Toro, and Fernando Torres Delgado (the BPPR bank manager at the time of the accident). The photographs entered into evidence speak volumes. Plaintiffs' Exhibit No. 36 clearly depicts that the center lane of the drive-thru Auto Bank, where José Toro had conducted his banking transaction, is a straightaway pointed directly at the ATM. The distance between the front of a vehicle conducting a transaction at the Auto Bank and ATM is a mere 49.97 feet.[4] The photographs also show that there were no protective barriers or devices of any kind located between the lanes of the Auto Bank and the ATM. There was evidence however that customer's using the branch office were protected by railing and that the Auto Bank machinery were protected by yellow posts, but not the ATM area.

Plaintiffs' evidence was further augmented by testimony submitted by defendants. Upon cross-examination, defendants' own expert, Dr. Garcia Pacheco, testified that the height

---

[3]  See Plaintiffs' Exhibits nos. 10-15, 36, docket no. 169.

[4]  This distance is significantly shorter than the distance between the pitcher's mound and home plate, in a regulation baseball game.

of the curb is substandardly low, reaching a height of only approximately five inches. Additionally, upon clarification of the Court, Dr. Garcia Pacheco testified that the placement of a fence in front the ATM area could serve as a protective warning to both the motorist and ATM user in the event of the type of accident that occurred in the present case. The evidence presented at trial by plaintiffs could have reasonably imparted on the jury the conclusion that the ATM site was an accident waiting to happen. Therefore, contrary to defendants' assertion, the record demonstrates that plaintiffs' provided evidence which contradicted defendants' expert witness' conclusion that the ATM site was not unduly dangerous. Additionally, the jury was entitled to give defendants' experts' testimony the weight, if any, it deserved.[5] *See Sator v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627-28, 64 S.Ct. 724, 729 (1944). And it appears the jury gave that testimony very little or no weight. This is not surprising as the bulk of Dr. Garcia Pacheco's testimony addressed regulations concerning public roadside barriers.

Contrary to defendants' assertions, the jury was not required to accept the testimony of BPPR and Federal Insurance's expert witness, Dr. Garcia Pacheco. First, the issue of whether the ATM was in an unsafe location or could have been installed in a safer location is not beyond the competence of lay determination. The circumstances surrounding the accident at issue simply do not involve such complex technical matters as to require the testimony of an expert witness. *Cf. Cruz-Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 277 (1st Cir.2003); *Quintana-Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62, 76-77 (1st Cir.2002). Thus, the jury was free to substitute its own common-sense judgment for that of the expert in part or in whole. *See Sator*, 321 U.S. at 627-28, 64 S.Ct. at 729. No expert witness, nor technical or other specialized knowledge was necessary for the jury to conclude that (1) the ATM was placed in a location vulnerable to vehicle penetration from vehicles exiting the Auto Bank; (2)

---

[5]  In pertinent part of its instruction regarding expert witnesses, the Court charged the jury as follows. "Expert testimony should be judged just like any other testimony. You should consider each expert opinion received in evidence in this case and give it such weight as you may think that it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education or experience, or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely."

anyone using the ATM would have to perform their banking transactions with their backs to the vehicles exiting the Auto Bank, leaving the ATM users in a vulnerable position; or (3) the safety of ATM customers could have been augmented by the use of guardrails, barriers, or other protective devices. Similarly, after viewing photographs of the bank premises, no expert witness, nor technical or specialized knowledge was necessary for the jury to conclude that the ATM could have been installed in an alternate location with the bank's premises where the safety of its users would not be compromised. This scenario was simply a prescription for an accident.

As stated before, the jury was entitled to weigh the credibility of defendants' expert witness. *See id.; Quintana-Ruiz*, 303 F.3d at 77-78 (discussing *Collazo-Santiago v. Toyota Motor Corp.*, 149 F.3d 23 (1st Cir.1998)). Dr. Garcia Pacheco testified that he had completed twenty projects in the capacity of design consultant for defendant BPPR in the last three (3) years and three (3) months, and that at the time of his testimony he was currently working on one such project for BPPR. This evidence is sufficient to support a determination that Dr. Garcia Pacheco was an interested witness. *See Quintana-Ruiz*, 303 F.3d at 78; *Collazo-Santiago*, 149 F.3d at 28. Thus, the jury was not required to believe the testimony of defendant's expert witness regarding the safety of the ATM site. *See Collazo-Santiago,* 149 F.3d at 28. Rather, the jury was free to give Dr. Garcia Pacheco's testimony as little weight as it concluded that it deserved.

Defendants also argue, that plaintiffs failed to sufficiently substantiate their allegation that BPPR was negligent by failing to install guardrails, barriers, or any other type of device to protect ATM users from exiting vehicular traffic because plaintiffs failed to present evidence of prior accidents. In support of their argument, defendants cite to *Rivera Jimenez v. Garrido & Co.,* 134 D.P.R. 840 (1993), for the proposition that the duty to install guardrails or roadside barriers is implicated only when the sites are inherently dangerous or where experience shows a substantial and repetitive number of accidents. The Court is unpersuaded by this argument. First, *Rivera Jimenez v. Garrido & Co.* is distinguishable from the present case because it concerns an accident that occurred on a public road rather than on the premises of a business establishment. Under the law of Puerto Rico when a business establishment,

such as BPPR, opens its business to the public for the purpose of conducting commercial operations for its own benefit, it has a duty to maintain its premises in a safe condition so that its clients are not injured in any way. *See Torres v. K-Mart*, 233 F.Supp.2d 273, 278 (D.P.R. 2002); Articles 1802, 1803, 1057 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 5141, 5142, 3021.  Thus, it appears that the case at hand implicates a different duty of care than the standard articulated in *Rivera Jimenez*. Second, plaintiffs claims of negligence do not require any proof of prior accidents. The absence of prior accidents is simply not dispositive on the issue of whether the site was unduly dangerous.

Upon the evidence plaintiffs introduced at trial, the jury reasonably could have determined that ATM users would have their backs to vehicles exiting the Auto Bank and that the ATM was susceptible to incursion by these vehicles.  The record also supports, a reasonable conclusion by the jury that the safety of ATM users could have been increased by the employment of barriers, and that the ATM could have been installed in a safer location. Further, the jury could have reasonably determined that it was foreseeable that, particularly due to the close proximity between the ATM and the Auto Bank exit lanes, that a vehicle using the Auto Bank could  accelerate and collide into the ATM, seriously injuring an ATM user in the manner in which plaintiff Yomar was injured.  Put simply, the evidence on record lends itself to the conclusion that because of the layout of the Auto Bank and ATM, it was foreseeable that such an accident would occur, as it did. Consequently, the evidence at trial was sufficient to allow the jury to reasonably find BPPR negligent because its decision to place the ATM at the selected location (or through omission, by failing to place the ATM in a safer alternate location), and/or by failing to install guardrails, barriers, or other protective device to protect ATM users from vehicular traffic exiting the Auto Bank was the foreseeable and  proximate cause of Yomar's injury and plaintiffs' related damages.

After examining the record as a whole, reading the evidence in the light most favorable to the jury verdict, with the Court's review weighted toward preservation of the jury verdict, the Court concludes that there was a legally sufficient evidentiary basis for a reasonable jury to find BPPR negligent and to return a verdict finding BPPR and Federal Insurance seventy-five (75) percent liable for plaintiffs' damages. *See Cruz-Vargas v. R.J. Reynolds Tobacco*

*Co.,* 348 F.3d at 275; *Primus v. Galgano*, 329 F.3d 236, 241 (1st Cir.2003), *Richards*, 341 F.3d at 41; *Guilloty Perez*, 339 F.3d at 50.

## CONCLUSION

For the aforementioned reasons, Banco Popular de Puerto Rico and Federal Insurance Company's renewed motion for judgment as a matter of law is hereby **denied**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 22, 2005.

S/ HECTOR M. LAFFITTE
United States District Judge